UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFREY VINCENT

CIVIL ACTION

VERSUS

NO.  22-123-JWD-SDJ

EDWARD RICHARDSON, ET AL.

RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT
TO DETERMINE RANKING OF INSURANCE

Before the Court is the *Motion for Partial Summary Judgment to Determine Ranking of Insurance* ("Motion") brought by Starr Indemnity & Liability Insurance Company ("Starr"). (Doc. 28.) It is opposed by Blue Hill Specialty Insurance Company ("Blue Hill"). (Doc. 32.) Starr filed a reply. (Doc. 35.) The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the reasons which follow, the Motion is granted in part and denied in part.

I.    BACKGROUND

This case arises out of a motor vehicle accident which occurred on June 25, 2020, on Interstate Highway 10 in West Baton Rouge Parish. (Doc. 1-2, Petition; Doc. 7, Joint Status Report at 1.) Plaintiff Jeffrey Vincent ("Vincent" or "Plaintiff") was driving a 2005 Peterbilt truck owned by Touchet Oilfield Services, LLC and leased to Charles Holston, Inc., (Doc. 31-3), a subsidiary of OMNI Environmental Solutions. (Doc. 28-1 at 1–2.) Plaintiff alleges that an underinsured vehicle driven by defendant Edward Richardson negligently struck the truck Plaintiff was driving. (Doc. 1-2, Petition; Doc. 7, Joint Status Report at 1.)

Plaintiff sued Richardson and his insurer in state court and, in a Second Supplemental and Amending Petition for Damages, sued Starr and Blue Hill as underinsured motorist insurers liable

to Plaintiff for amounts over Richardson's insurance coverage.[1] (Doc. 1-2, Petition at 14, ¶¶ 13, 15.) The case was removed to this Court based on diversity of citizenship jurisdiction. (Doc. 1 at 3.) Plaintiff's motion to remand was denied. (Docs. 22, 23.)

## II.    FACTS

"At the time of the accident, Plaintiff was driving a 2005 Peterbilt Truck bearing serial number VIN 1XP5DB9X45N858716." (Doc. 28-6, Starr's Statement of Material Facts in Support of Motion for Partial Summary Judgment to Determine Ranking of Insurance ("SMF") at 1).[2] "The truck was owned by Touchet Oilfield Services, LLC ('Touchet') and leased to Charles Holston, Inc. ['Holston'], a subsidiary of OMNI Environmental Solutions ['OMNI']." (*Id*.)

The lease required Holston, the lessee, to provide automobile liability insurance on the truck. (Doc. 31-3 at 2, ¶ 10.)[3] It also required the owner/lessor, Touchet, to "maintain bobtail and non trucking liability coverage" on the vehicle. (*Id*.)

Starr issued a policy of automobile liability insurance "to OMNI covering the vehicle lessee" Holston. (Doc. 28-6, SMF at 2; *see also* Doc. 28-1 at 2 ("Starr issued coverage to the vehicle lessee.").) The Starr policy is attached to Starr's motion as Doc. 31-1. The Starr policy does not list the Peterbilt as a covered auto, (Doc. 31-1 at 8), but provides coverage to vehicles

---

[1] Because Richardson has liability insurance, Plaintiff makes claims against Starr and Blue Hill's underinsured motorist provisions ("UIM") and not for uninsured motorist ("UM") coverage. For purposes of the issues raised in this case, there is no distinction between these terms UM and UIM, and the Court will treat the terms interchangeably.

[2] In its opposition, Blue Hill erroneously alleges that Starr "did not include a separate, short and concise statement of material facts as required by Local Rule 56." (Doc. 32 at 3, n.10.) This is incorrect, as Starr filed the required statement of facts. (Doc. 28-6.) As a result of its error, Blue Hill did not, as required by Middle District Local Rule 56(c), file its own statement of facts admitting, denying, or qualifying the mover's facts. Rather, Blue Hill, "out of an abundance of caution . . . identifie[d] facts in Starr's motion that it disputes." (*Id*.) Because Blue Hill did not file the required response to Starr's SMF, the Court could deem those facts as admitted. M.D. La. LR 56(f). In its discretion and based on Blue Hill's oversight, the Court will not do so. *Sanford v. Kirst*, No. 21-347, 2023 WL 4052957, at *1–2 (M.D. La. June 16, 2023). However, the nine items listed in Starr's SMF are not contested by Blue Hill in the body of its opposition, and there seem to be no issues of fact in dispute between the Starr and Blue Hill.

[3] The lease was originally filed as Doc. 28-4 but, in order to comply with local rules, was refiled as Doc. 31-3. The same is true of the Starr policy (originally filed as Doc. 28-2 and refiled as Doc. 31-1) and the Blue Hill policy (originally filed as Doc. 28-3 but re-filed as Doc. 31-2).

hired by lessee OMNI and its subsidiary Holsten. (*Id.* at 7, 19 (showing the selection of Hired Auto Liability coverage); *id*. at 53 (extending coverage to OMNI's subsidiaries).)

While the Starr policy contains a UM endorsement, (*id.* at 37–39), it also contains a rejection/waiver form executed by its named insured, (Doc. 31-4 at 1). However, Starr concedes that "a recent decision of the Louisiana Supreme Court indicates the waiver was improper and, thus, may be rendered invalid." (Doc. 28-1 at 2–3 (citing *Berkley Assurance Co. v. Willis*, 2021-01554 (La. 12/9/22), 355 So. 3d 591, 593, *reh'g denied*, 2021-01544 (La. 1/27/23) (holding that the failure to include the insurer's name on a UM/UIM coverage selection form renders the attempted rejection ineffective).) The selection form on which the insured attempted to reject UM bodily injury coverage does not include the insurer's name. (Doc. 31-4 at 1.) Under these circumstances, Starr concedes that UM "coverage would be mandatory under La. R.S. 22:1295 as to the plaintiff here." (Doc. 28-1 at 3.)

Blue Hill issued an insurance policy to the Touchet covering "Non-Trucking Liability to Others Bodily Injury and Property Damage Liability." (Doc. 31-2 at 2–3.) The Blue Hill policy contains an "UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT." (*Id.* at 45–50.) Although the Blue Hill policy contains an "other insurance" clause which purports to make its UM coverage excess over any other uninsured or underinsured motorist coverage, the clause contains an exception "for bodily injury to an insured when occupying an insured auto." (Doc. 28-6 at 2 (citing and quoting Doc. 31-2 at 49).)

The Blue Hill policy defines "insured auto" as "any auto specifically described on the declarations page." (*Id.* (citing Doc. 31-2 at 12).) The 2005 Peterbilt truck involved in the accident is listed as an insured vehicle on the declarations page. (*Id.* (citing Doc. 31-2 at 3).)

3

### III.    ARGUMENTS OF THE PARTIES

#### A.  Starr

Starr's Motion argues that its policy coverage should be ranked "as an excess policy to be in play . . . after all other available insurance, including the Blue Hill policy is fully exhausted." (Doc. 28 at 1.) Starr points the Court to La. R.S. § 22:1295(c), which ranks coverages when there are multiple UM policies. (Doc. 28-1 at 4.) This statute provides, in pertinent part:

> (c) *** [W]ith respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities of recovery under uninsured motorist coverage shall apply:
>
> (i) *The uninsured motorist coverage on the **vehicle** in which the injured party was an occupant is **primary**.*
>
> (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

La. R.S. § 22:1295 (emphasis added).

Here, argues Starr, it is undisputed that Blue Hill's policy was on the *vehicle* involved in the accident, the Peterbilt truck. (Doc. 28-1 at 4.) By contrast, Starr's policy "issued coverage to OMNI covering the vehicle lessee [Holston]," not the vehicle. (Doc. 28-6, SMF at 2.) Furthermore, Starr's UM coverage implicated in this case came not from its insured choosing UM coverage; indeed, the insured selected <u>no</u> UM coverage. (Doc. 31-4.) However, because the rejection form did not contain the insurer's name, the mandatory UM coverage required by Louisiana law must now be "read into" or "implied" in Starr's policy. (Doc. 28-1 at 5.) Under these circumstances, argues Starr, the UM coverage is on the *person* insured, i.e., Vincent, the driver, and not the vehicle.

4

(*Id.* at 5–6 (citing *Higgins v. La. Farm Bureau Cas. Ins. Co.*, 2020-01094 (La. 3/24/21), 315 So. 3d 838, 845).)

Starr argues more specifically that the effect of mandatory UM coverage coming into force by virtue of an insured failing to properly reject it is "not to apply UIM coverage to OMNI's *vehicles*, it is to apply UIM coverage to any person [']*who enjoys the status of the insured*['] under the liability section of the Starr policy." (*Id.* at 5 (quoting *Howell v. Balboa Ins. Co.*, 564 So. 2d 298, 301 (La. 1990)) (emphasis in *Howell*).)

> In other words[,] the mandatory coverage to be "read into" Starr's policy is not coverage "on the vehicle," it would be coverage on Mr. Vincent himself. This is because "UM coverage is an implied amendment to any automobile liability policy made 'for the protection of *persons insured thereunder*' . . . ."

(*Id.* (quoting *Higgins*, 315 So. 3d at 845).)

Therefore, concludes Starr, because Starr's UM coverage insured "the person" and not the vehicle, Blue Hill's policy must be ranked ahead of Starr's. (*Id.* at 5–6.)

Alternatively, Starr argues that if the Court rejects its argument that Blue Hill is primary and that Starr's coverage is also on the vehicle, then it and Blue Hill should be held to be co-primary insurers. (*Id.* at 6.)

### B.  Blue Hill

Blue Hill does not disagree with Starr that generally, UM coverage on the vehicle is primary over other UM coverages. It argues, however, that while Blue Hill did insure the vehicle, its policy provided only "bobtail/non-trucking policy" coverage, which extended to instances in which "the vehicle [was] not being used to carry property or used for any business purpose." (Doc. 32 at 1.) It points the Court to its policy exclusion "15. Trucking Use":

> Coverage under this Part I, including our duty to defend, does not apply to an insured auto or any attached trailer while operated, maintained, or used:

5

a.  To carry property or while such property is being loaded or unloaded from the insured auto or an attached trailer; or

b.  In any business or for any business purpose.

(*Id.* at 2 (emphasis omitted) (quoting Doc. 31-2 at 38).)

According to Blue Hill, "Vincent was hauling contaminated soil . . . pursuant to the lease agreement" at the time of the accident, (*id.* at 3 (citing Doc. 32-2, Deposition of Plaintiff Vincent at 84–92)), and was within the course and scope of his employment at the time, (*id.* (citing Doc. 31-1 at 132)). Since the truck was carrying cargo at the time of the accident, Starr's policy provides "the primary layer of UM coverage." (*Id.* at 2 (citing as authority *Williams v. Great Am. Ins. Co.*, 240 F. Supp 3d 523 (E.D. La. 2017)).)

> Blue Hill explains:
>
> Companies shipping or providing transportation for cargo may engage independent truckers to carry the cargo. Often, the company engaging the independent trucker will provide liability coverage for the trucker while his equipment is being used under the contract. At other times, particularly when the trucker is not hauling cargo or is without a trailer, the trucker needs liability coverage. The coverage is available under the bobtail policies or a/k/a policies providing limited liability for non-trucking use of an automobile. Recognizing this, the lease required Holsten/Omni to maintain auto liability coverage while being utilized for vacuum work and hauling. Touchet would obtain bobtail and non-trucking liability coverage for those occasions when the Peterbilt was not being used for these purposes.

(*Id.* at 3–4.)

Blue Hill acknowledges that under Louisiana's ranking of UM policies, when a plaintiff is occupying a non-owned vehicle, the UM coverage on the vehicle is primary. (*Id.* at 4–5.) But Blue Hill argues, despite Starr's argument to the contrary, Starr's insurance covered the vehicle. (*Id.* at 5–6.)

Starr's own policy defines a covered vehicle as any auto owned, hired, or borrowed with the insured's express or implied permission, which is the case here. (*Id.* at 2–3, 5 (citing Doc. 31-1 at 6, 10, 19, 20, 31).) Accordingly, not only does Vincent meet the definition of an insured under

Starr's policy, which Starr also acknowledges, the Peterbilt also meets the definition of a covered auto. (*Id*. at 5.)

As to Starr's alternative argument that the Court treat Starr and Blue Hill as co-primary UM insurers, this "is a concept the Louisiana legislature is [sic] specifically prohibited." (*Id*. at 6.) In conclusion, argues Blue Hill, "pursuant to La. R.S.  22:1295, Starr's policy provides primary coverage for Vincent's claims, and Blue Hill provides excess coverage." (*Id*.)

### C.  Starr's Reply

Starr notes that Blue Hill does not contest the three central facts that govern the ranking issue: "(1) Blue Hill provides UIM coverage (2) the Blue Hill policy is 'on the vehicle' in question, and (3) the terms of the Blue Hill policy expressly provide primary coverage." (Doc. 35 at 1.) "Blue Hill's UIM coverage is statutorily primary under this statute and contractually primary under the wording of the Blue Hill policy." (*Id*. at 2.)

The arguments Blue Hill does make are all premised on its liability and not its UIM coverage, "devot[ing] the entirety of its Opposition to the wholly irrelevant question of which policy provides *liability* coverage." (*Id*.) "Ranking liability coverages and ranking UIM coverages are independent endeavors." (*Id*. at 3.) "The Blue Hill Policy contains three separate 'insuring agreements' for (1) liability to others, (2) damage to insured autos, and (3) UM/UIM coverage." (*Id.* at 2 (citing Doc. 31-2 at 16, 24, and 45, respectively).)

The Non-Trucking endorsement upon which Blue Hill mainly relies "modifies only the liability coverage." (*Id*. at 2–3 (emphasis omitted) (citing and quoting Doc. 31-2 at 38).) Blue Hill's contention that *Williams v. Great Am. Ins. Co*., *supra*, supports its argument regarding the ranking of UM coverages is mistaken since *Williams* "centered on ranking *liability* policies." (*Id*. at 3.)

As to Blue Hill's argument that Starr's policy covers the Peterbilt truck and is thus primary, Starr notes that the language relied upon by Blue Hill, the "broad definition of insured auto," is

from the liability part of Starr's policy, not the UM section. (*Id*. at 4.) As to the latter, Starr's insured

rejected UM coverage, and it is only by virtue of UM coverage being "read into" the policy by

way of an "implied amendment" that there is UM coverage. (*Id*.) Thus, under existing Louisiana

jurisprudence, such an implied amendment is "made 'for the protection of persons insured

thereunder' " and not the vehicle. (*Id*. (again citing and quoting *Higgins*, 315 So. 3d at 845).)

## IV.    STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its

opponent must do more than simply show that there is some metaphysical doubt as to the material

facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a

genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986) (emphasis omitted) (internal citations omitted). The non-mover's burden is not

satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of

evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal

quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*,

475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of
> the witnesses, weigh the evidence, or resolve factual disputes; so long as the
> evidence in the record is such that a reasonable jury drawing all inferences in favor
> of the nonmoving party could arrive at a verdict in that party's favor, the court must
> deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

> Insurance policies are contracts, and courts must interpret them "by using the
> general rules of interpretation of contracts set forth in the Civil Code." *Louisiana
> Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). The

8

court must ascertain the "parties' intent as reflected by the words in the policy . . . ." *Id*. "Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *Id*.

*Ohio Sec. Ins. Co. v. Hudson Specialty Ins. Co.*, 564 F. Supp. 3d 472, 476 (E.D. La. 2021).

"Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute." *Higgins v. La. Farm Bureau Cas. Ins. Co.*, 2020-01094 (La. 3/24/21), 315 So. 3d 838, 841 (internal citations omitted.) *See also Boudreaux v. Optimum Ins. Co.*, 854 F. 2d 88, 90 (5th Cir. 1988) (same).

## V.    DISCUSSION

### A.  Does the Starr policy provide UIM coverage?

The Starr policy contained an uninsured motorist endorsement. (Doc. 31-1 at 37–39.) Starr's insured attempted to reject UM coverage but did so on a form which did not contain the insurer's name. (Doc. 31-4 at 1.) Because the UM rejection form required by the Louisiana Commissioner of Insurance requires the name of the insurer to appear on the form (La. R.S. § 22:1295(1)(a)(ii)), this deficiency rendered the attempted rejection ineffective. "Failure to properly complete the UM form results in an invalid rejection or selection of lower limits of UM coverage. Consequently, by operation of statute, UM coverage is equal to the liability limits of the policy." *Berkley Assurance Co. v. Willis*, 2021-21554 (La. 12/19/22), 355 So. 3d 591, 596 (internal citations omitted).  As "[t]he requirement of UM coverage is an implied amendment to any automobile liability policy, 'UM coverage will be *read into the policy* unless validly rejected.' " *Id*. at 594 (emphasis added) (citations omitted). "*[B]y operation of statute*, UM coverage [is deemed] equal to the liability limits of the policy." *Id*. at 596 (emphasis added) (citation omitted). Therefore, despite the insured's attempt to reject UM coverage and Starr's half-hearted argument

9

to the contrary, (Doc. 28-1 at 2), by operation of the UM statute, the Starr policy provided UM coverage for the subject accident.

### B. Does the Blue Hill policy provide UIM coverage?

Blue Hill argues that its "non-trucking endorsement limit[s] coverage to those instances in which the vehicle is not being used to carry property or used for any business purposes." (Doc. 32 at 1.) It maintains that the truck was carrying property and being used for a business purpose. (*Id.* at 1, 3.) But Blue Hill does not argue it provides no coverage at all. Rather, it argues that because "Starr's policy provided primary liability coverage and therefore primary UIM coverage," Starr's UIM coverage is primary, (*id.* at 3), "and Blue Hill's provides excess coverage," (*id.* at 6).

Here, the Court agrees with Starr that Blue Hill is mixing apples with oranges. The non-trucking endorsement upon which it so heavily relies is an exclusion specifically limited to its liability coverage. (Doc. 28-3 at 38.) The endorsement's title reads: "Limited *Liability* Coverage for Non-Trucking Use of an Automobile." (*Id.* (emphasis added).) The exclusion by its own language is limited to "[c]overage under this Part I" which is "*Liability* to Others." (*Id.* (emphasis added).)

Furthermore, the Louisiana Supreme Court has made clear that policy provisions in the liability section of a policy do not necessarily control coverage under the UM section. *Green ex rel. Peterson v. Johnson*, 2014-0292 (La. 10/15/14), 149 So. 3d 766, 779 (finding that "[t]he lower courts erred in . . . holding that there could be no UM coverage absent liability coverage . . ."); *Higgins v. La. Farm Bureau Cas. Ins. Co.*, 2020-01094 (La. 3/24/21), 315 So. 3d 838, 842 (finding that "even though the defendant in [*Green*] contended that the policy definitions for 'insured person' and 'insured auto' as set forth in the liability section of the policy were not met, the Court

10

found that this was irrelevant, because contractual coverage existed for the accident under the terms of the UM section of the policy.")

### C.  Is the Blue Hill policy primary?

By way of Act 623 of 1977, the Louisiana Legislature adopted what became known as the "anti-stacking" provision, which originally was La. R.S. § 22:1406(D)(1)(c) but is currently La. R.S. § 22:1295(1)(c). 15 William Shelby McKenzie & H. Alston Johnson, III, *Louisiana Civil Law Treatise Insurance Law and Practice*, § 4:27 (4th ed. 2023). The statute "prohibit[s] stacking of multiple UM coverages available to the same insured, except in limited circumstances." (*Id.*) [4]

There is an exception to this rule provided in the anti-stacking statute "with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party." La. R.S. § 22:1295(1)(c); *Ohio Sec. Ins. Co. v. Hudson Specialty Ins. Co.*, 564 F. Supp. 3d 472, 476 (E.D. La. 2021). Here, Vincent was injured in a vehicle he did not own and may thus take advantage of this provision.

Where, as here, multiple UM coverages are available, the statute provides for the ranking of the policies. La. R.S. § 22:1295(c) states, in pertinent part:

> (c) *** [W]ith respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities of recovery under uninsured motorist coverage shall apply:

---

[4] As the Louisiana Supreme Court has said:

> Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded the insured and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy. Interpolicy stacking occurs when the insured attempts to recover UM benefits under more than one UM coverage provision or policy . . . .

*Boullt v. State Farm Mut. Auto. Ins. Co.*, 99-0942 (La. 10/19/99), 752 So. 2d 739, 742.

(i) *The uninsured motorist coverage on the **vehicle** in which the injured party was an occupant is **primary**.*

(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him.\*\*\*

La. R.S. § 22:1295(1)(c).

As discussed above, both the Blue Hill and Starr policies provided UM coverage, and so the question becomes, did one or both policies provide UM coverage "on the vehicle" in which Vincent was riding at the time of the accident, and are one or both therefore primary?[5] As to Blue Hill, the policy in question specifically names the Peterbilt truck as a covered auto, (Doc. 31-2 at 3), and the UM coverage insures "any person occupying your insured auto." (*Id.* at 45.) As discussed above, the non-trucking bobtail coverage is specifically limited to its liability coverage, (Doc. 28-3 at 38), and, therefore, does not affect its UM coverage. Because Blue Hill clearly provides UM coverage on the vehicle which Plaintiff was driving, it is primary within the meaning of La. R.S. § 22:1295(1)(c)(i).

### D. Is the Starr policy primary?

Blue Hill argues that Starr's UM coverage is primary because "Starr's own policy defines a covered vehicle as any auto owned, hired, or borrowed with its insured's express or implied permission." (Doc. 32 at 5.) Because the Peterbilt is a hired vehicle, it is a "covered vehicle" under the policy, and the UM coverage is therefore "on the vehicle" and primary. (*Id.*)

Starr replies that its UM coverage exists not by virtue of the policy at issue; rather, because its insured attempted unsuccessfully to reject UM coverage, that coverage was "read into the

---

[5] As is discussed later in this ruling, despite Blue Hill's argument to the contrary, there can be co-primary UM coverages under La. R.S. § 22:1295(1)(c).

policy" by operation of law. (Doc. 28-1 at 5–6.) Because UM coverage follows the person and not

the vehicle, the Starr policy did not cover the vehicle, although it did insure Plaintiff. (*Id*.)

> In other words[,] the mandatory coverage to be "read into" Starr's policy is not coverage "on the vehicle," it would be coverage on Mr. Vincent himself. This is because "UM coverage is an implied amendment to any automobile liability policy made 'for the protection of the persons insured thereunder' . . . ."

(*Id.* at 5 (emphasis omitted) (quoting *Higgins*, 315 So. 3d at 845).)

> First, it is clear that
>
> an insurance policy need not specifically list the covered vehicle in order to be considered "[t]he uninsured motorist coverage on the vehicle." Numerous cases have found policies that provide coverage to the injured occupant but which do not list the vehicle are statutorily primary, finding them co-primary with policies that do list the vehicle.

*Ohio Sec. Ins. Co.*, 564 F. Supp. 3d at 477 (citing *Capone v. King*, 467 So. 2d 574 (La. App. 5th

Cir. 1985); *Richardson v. Zurich Amer. Ins. Co*., No. 17-571, 2018 WL 1409271 (E.D. La.

3/21/2018)).)

In the *Ohio Security* case, four potential UM coverages were being considered. *Id.* at 475.

Like here, one of the policies (Progressive's) listed the vehicle involved in the accident as a covered

vehicle, and another policy (Ohio Security's) provided coverage by virtue of a hired auto

endorsement. *Id.* The issue was, like here, the ranking of the policies.

Ohio Security argued that because its policy did not specifically list the subject vehicle, its

coverage was not "on the vehicle," and, therefore, the Progressive policy should come before it.

*Id*. at 477. The court rejected this argument.

Notwithstanding the fact that the Starr policy provided liability coverage for the Peterbilt

truck as a hired auto of Holsten, Starr argues that the UIM coverage should be considered

separately and treated differently from the liability coverage. "Ranking liability coverages and

ranking UIM coverages are independent endeavors." (Doc. 35 at 3 (lacking citation to authority).)

Starr relies heavily on the recent Louisiana Supreme Court case of *Higgins v. Louisiana Farm Bureau Casualty Insurance Co.*, 2020-01094 (La. 3/24/21), 315 So. 3d 838, for the proposition that "UM coverage is an implied amendment to any automobile liability policy made 'for the protection of persons insured thereunder' . . . ." (Doc. 28-1 at 5 (emphasis omitted).) From this, Starr argues that because UIM coverage "follows the individual" and not the vehicle, Starr's UIM coverage is not, for purposes on 1295(c)(i), "coverage on the vehicle." (*See also* Doc. 35 at 4 (Starr's reply brief, citing and quoting *Higgins*, 315 So. 3d at 845).)

In *Higgins*, however, the issue was whether the regular use exclusion on the plaintiff's personal auto policy violated Louisiana law's mandatory UM coverage statute when the plaintiff was injured in his employer's vehicle which had no UM coverage. *Higgins*, 315 So. 3d at 839–40. *Higgins* did not involve the issue of the interpretation of La. R.S. § 22:1295(1)(c)(i).

Starr points to *Howell v. Balboa Ins. Co.*, 564 So. 2d 298, 301 (La. 1990) as standing for the proposition that "UM coverage attaches to the person of the insured, not the vehicle." (Doc. 28-1 at 3.) "Any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist." *Howell*, 564 So. 2d at 301. But *Howell* too did not involve the ranking of UM policies under La. R.S. § 22:1295(1)(c) or the interpretation of the phrase "coverage . . . on the vehicle" in that context.

Starr cites other cases which it argues support its position. (Doc. 28-1 at 3; *see also id*. at 5, n.28 (citing *Myers v. Welch*, 2017-0063 (La. App. 1st Cir. 10/25/17), 233 So. 3d 49, 58, *writ denied*, 2017-2165 (La. 3/9/18), 238 So. 3d 454); *Norton v. Lewis*, 623 So. 2d 874, 874 (La. 1993); *Bennett v. Brown*, 2016-622 (La. App. 3d Cir. 12/21/16), 209 So. 3d 830, 831–32, *writ denied*, 2017-0146 (La. 3/13/17), 216 So. 3d 803).) But none of these cases stand for the proposition Starr

posits:  where the vehicle involved in the crash is a covered auto under its policy by virtue of a hired auto endorsement, where its UM coverage exists by virtue of an ineffective UM rejection on that same policy, and where the plaintiff has no personal UM coverage, then its UM coverage is not "on the vehicle" and does not provide primary UM coverage under La. R.S. § 22:1295(1)(c)(i). Nor has Starr pointed the Court to any such holding.

"[I]n order for a tort victim to be entitled to statutory UM coverage, which would be an implied amendment to an automobile liability policy not expressly containing such coverage, the tort victim seeking UM coverage must qualify as a liability insured under the policy at issue." *Green ex rel. Peterson*, 149 So. 3d at 772 (emphasis omitted). *See also Higgins*, 315 So. 3d at 842 (endorsing the quoted language from *Green*). Here, Plaintiff is admittedly a liability insured under the Starr policy, and the Starr policy is the only policy into which UM coverage can be statutorily "implied" or "read" since Plaintiff had no personal UM coverage, and Blue Hill's UM coverage is contractual.

If Starr's UM coverage, whether contractual or implied, had been on Plaintiff's personal vehicle, the coverage would clearly not have been "on the vehicle" in which Plaintiff was injured, and Starr's argument would have merit. But such was not the case.  The Starr policy's liability and uninsured motorist sections purport to cover the Peterbilt truck by virtue of it being a hired auto. It is Plaintiff's use and occupancy of the covered truck that qualifies him as an insured under the Starr policy. With the failed rejection of UM coverage, there is no policy into which UM statutory coverage can be read or implied other than that issued by Starr which insures the Peterbilt truck as a hired auto. The Court finds, therefore, that, for purposes of La. R.S. § 22:1295(1)(c)(i), Starr's statutory UM coverage is "on the vehicle" which Vincent was driving, and, therefore, Starr provides primary UM coverage for this accident.

### E.  Are the Blue Hill and Star Policies co-primary?

Blue Hill argues without citation to authority that there cannot be co-primary policies because La. R.S. § 22:1295 "provides for one primary and one excess policy to provide UIM coverage." (Doc. 32 at 5–6.) This is incorrect, as the statute does not so state and "[n]umerous cases have found policies that provide coverage to the injured occupant but which do not list the vehicle are statutorily primary, finding them *co-primary* with policies that do list the vehicle." *Ohio Sec. Ins. Co.*, 564 F. Supp. 3d at 477 (emphasis added); *id.* at 476 ("When more than one UM policy covers the vehicle for purposes of [La. R.S. § 22:1295(c)], all such policies are primary."). *See also, e.g.*, *Capone v. King*, 84-361 (La. App. 5th Cir. 1985), 467 So. 2d 574; *Richardson*, 2018 WL 1409271; *Boudreaux v. Optimum Ins. Co.*, 854 F.2d 88, 91–92 (5th Cir. 1988) (finding the insurer of the plaintiff's employer to be a co-primary UM insurer with the UM insurer of the loaner vehicle provided to the plaintiff while his vehicle was being serviced).

Blue Hill offers no other reason for its argument that its coverage is excess to that of Starr.[6] For the reasons expressed above, the Court rejects Blue Hill's argument that there can only be one primary insurer and finds that Starr and Blue Hill provide co-primary coverage.

---

[6] The Court notes that the Blue Hill UIM policy includes an "other insurance" clause which states, in pertinent part, "any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage, *except for bodily injury to an insured when occupying an insured auto* . . . ." (Doc. 31-2 at 49 (emphasis added).) Thus, this clause has no relevance to the issues in this case.

**VI.     CONCLUSION**

Accordingly,

**IT IS ORDERED** that Starr's *Motion for Partial Summary Judgment to Determine Ranking of Insurance* (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** to the extent it requests a declaration that the Starr and Blue Hill policies provide co-primary underinsured motorist coverage. In all other respects, the Motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>February 23, 2024</u>.


 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

17